## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES,**<br><br>v.<br><br>**PATRICK KEOGAN,**<br>Defendant | Crim. No. 16-CR-10244-DPW |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR REVIEW OF DETENTION ORDER BY DISTRICT COURT JUDGE

Defendant Keogan's motion for review of the order of detention should be denied because the magistrate judge found clear and convincing evidence that Mr. Keogan poses a danger to the safety of another or the community if released (a finding that Mr. Keogan does not challenge) and a preponderance of the evidence that he poses a serious risk of flight.

Mr. Keogan's challenges are without merit.  The order correctly held that Mr. Keogan's threats of arson in violation of 18 U.S.C. § 844(e) constitute crimes of violence under the Bail Reform Act, 18 U.S.C. § 3156(a)(4), which therefore qualify him for being detained on the finding of dangerousness.  And Mr. Keogan's argument against the order's conclusion of risk of flight is too undeveloped to convey the grounds on which to make a response.

If this Court overturns the magistrate judge's ruling on dangerousness or risk of flight, the United States asks the Court to remand the detention question to Chief Magistrate Judge Boal to enter findings on whether Mr. Keogan should be held on the alternative ground of risk of obstruction of justice, 18 U.S.C. § 3142(f)(2)(B), a ground that her decision does not address.

### RELEVANT FACTS AND PROCEDURAL POSTURE

According to the criminal complaint originally lodged against him, Mr. Keogan

threatened the Islamic Society of Boston Cultural Center in Roxbury and the Islamic Society of Northeastern University, in Boston, with a post to each group's Facebook page saying "Hello scumbags" next to a smiley face emoji, which accompanied an image depicting a mosque on fire with words threatening "BURN YOUR LOCAL MOSQUE."  *See, e.g.,* Complaint Aff. [Dkt. # 3-1] ¶¶ 13-16, 18.  He was therefore charged (originally by complaint, now by indictment) with two counts of violating 18 U.S.C. § 844(e).  *See* Complaint [Dkt. # 3] (Counts 1 and 2); Indictment [Dkt. # 14] (Counts 1 and 2).  For buying rifle ammunition and transporting it back to his home in Massachusetts after two earlier felony convictions, Mr. Keogan was also charged with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1).  *See* Complaint [Dkt. # 3] (Count 3); Indictment [Dkt. # 14] (Count 3).

The United States moved to detain Mr. Keogan on the basis of dangerousness, 18 U.S.C. § 3142(f)(1)(A), risk of obstruction of justice, 18 U.S.C. § 3142(f)(2)(B), and risk of flight, 18 U.S.C. § 3142(f)(2)(A).  Order on Government's Motion for Detention ("Detention Order") [Dkt. # 23] at 1.  The detention hearing elicited a number of facts relevant to all of these grounds for detention:  repeated threats of arson in this case, Detention Order [Dkt. # 23] at 4; possession and transportation of ammunition despite a prior felony conviction, *id.*; "us[ing] Facebook to post hostile and threatening comments regarding the Islamic community and other Islamic mosques," *id.*; a criminal history that includes "convictions for malicious destruction of property, compulsory insurance violations, operating a motor vehicle after license suspended, possession of a Class D controlled substance, threatening to commit a crime,[1] assault and battery with a

---

[1] The police report relating to this conviction was summarized as alleging that after Mr. Keogan "believed that one of his former co-workers was the reason that he was fired from his

deadly weapon,[2] and two separate instances of operating a motor vehicle under the influence of alcohol," *id.*; at Keogan's residence, "thousands of rounds of ammunition, a pineapple grenade,[3] dozens of bladed weapons, and over forty guns, including handguns and rifles," some of which Keogan's father claimed belonged to him (the father), *id.* at 5; and "a history of heavy drinking" with him "report[ing] that he generally drinks 1 to 10 beers on a daily basis," *id.* at 5.

Based on all this, Chief Magistrate Judge Boal found clear and convincing evidence that "[t]he nature of the offense and the potential danger to the community combined with Keogan's criminal convictions and history of alcohol abuse weigh heavily in favor of detention," and that "no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community." Detention Order [Dkt. # 23] at 6.

Critically, Mr. Keogan has not challenged this factual finding of dangerousness by clear and convincing evidence. And although Mr. Keogan has asserted that "[o]ther aspects of the [magistrate judge's] decision suggest Mr. Keogan is not a risk of flight," Defendant's Motion for

---

job," Transcript of Detention & Probable Cause ("Transcript") [Dkt. # 20] at 21:7-10 (D. Mass. Aug. 12, 2016), Keogan "sent several videos and pictures of beheadings . . . [p]hotos of a fictional serial killer, Dexter, with a person on the ground, foot on their face," *id.* at 21:11-15, and text messages threatening that "'I will after I fuck you up and rape your face, faggot, and your kin, I will involve that cunt,' referring to the victim's daughter," *id.* at 21:24-22:3.

[2] The police report relating to this conviction was summarized as alleging that "[t]he defendant approached a victim, punched him several times in the face while the victim was in a car. When the victim tried to get out of the vehicle, the defendant kicked him in the face." Transcript [Dkt. # 20] at 20:15-20.

[3] The pineapple grenade has since been analyzed by the FBI and found not to have been operable at the time of the search. The FBI has not yet completed analyzing whether it could have been made operable using other items found at the residence.

Review of Detention Order by District Court Judge ("Defendant's Motion") [Dkt. # 26] at 9, the assertion does not specify what "other factors" are at issue or how the magistrate judge's conclusion is in error.

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to review the magistrate judge's order of detention under 18 U.S.C. § 3145(b). It reviews legal questions *de novo*. It reviews factual questions with some deference to the magistrate judge, at least when the magistrate judge makes findings as carefully as was done here. "Where, as here, a court examines the detention order without taking new evidence, a degree of deference to the factual determinations of the Magistrate tempers the independent review." *United States v. McForbes,* 109 F. Supp. 3d 365, 367 n.2 (D. Mass. 2015) (Hillman, D.J.). "In reviewing the magistrate judge's detention orders, the court must undertake an independent review, giving her decision such deference as the care and consideration manifested by the magistrate judge warrant." *United States v. Simone,* 317 F. Supp. 2d 38, 42 (D. Mass. 2004) (Wolf, D.J.).

## SERIOUS RISK OF FLIGHT

As mentioned above, the magistrate judge found that no conditions would assure Mr. Keogan's appearance as required. This finding was supported by ample grounds: multiple criminal convictions; multiple defaults on prior criminal cases, Transcript [Dkt. # 20] at 22:4-12; a violation of probation, *id.* at 22:13-16; his prior period of incarceration, *see* Ex. 7, Defendant's Board of Probation Record; the high penalties that he likely faces;[4] the improbability of Mr.

---

[4] The United States has calculated Mr. Keogan as belonging to Criminal History Category III, and each count bears a 10-year maximum term of imprisonment, *see* 18 U.S.C. §§ 844(e),

4

Keogan's being responsive to court supervision given his criminal history and history of making threats despite prior contact with law enforcement and a prior state conviction for making threats; his history of heavy drinking; and the proposal that he be returned to a house with other adults who would likely have alcoholic beverages available and, in any case, who allowed Mr. Keogan unfettered access to firearms and ammunition despite his earlier felony conditions.

Against this is Mr. Keogan's bare assertion that "[o]ther aspects of the [magistrate judge's] decision suggest Mr. Keogan is not a risk of flight," Defendant's Motion [Dkt. # 26] at 9.

This conclusory assertion is too undeveloped to convey the grounds on which to make a response. Consequently, even if the Court agrees with Mr. Keogan's "crime of violence" argument, there is still an alternative ground on which to detain him that has essentially gone unchallenged: risk of flight.

## DANGEROUSNESS

As noted above, Mr. Keogan's argument against dangerousness is *not* that he is not dangerous, given that he hasn't challenged the finding of dangerousness.

Rather, his argument against dangerousness is entirely legal, that his threats of arson that violate 18 U.S.C. § 844(e) do not qualify as "crimes of violence" under the Bail Reform Act's definition in 18 U.S.C. § 3156(a)(4), which would otherwise allow him to be detained on the finding of dangerousness.

---

924(a)(2) (setting forth penalty for violation of 18 U.S.C. § 922(g).

***18 U.S.C. § 844(e) Fits the Bail Reform Act's Elements and Force Clause, 18 U.S.C. § 3156(a)(4)(A), as "an offense that has as an element of the offense the . . . threatened use of <u>physical force against the person or property of another</u>"***

Mr. Keogan argues that 18 U.S.C. § 844(e) does not qualify under § 3156(a)(4)(A) as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another" because (A) § 844(e) covers both threats of arson and conveying false information about arson, (B) § 844(e) is therefore "indivisibile" under *Mathis v. United States,* 136 S. Ct. 2243, 2248 (2016); (C) therefore § 844(e) must be parsed using the "categorical approach"; (D) using the categorical approach, § 844(e) covers more conduct than does § 3156(a)(4)(A) definition of "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another"; and therefore (E) the categorical approach does not allow the Court to conclude that Mr. Keogan's threats of arson are threats to use physical force against the person or property of another.

### *The* **Mathis** *Decision*

In *Mathis*, the Supreme Court addressed a circuit split regarding the circumstances in which the modified categorical approach may be used to determine whether a crime is a violent felony under the Armed Career Criminal Act. *See Mathis,* 136 S. Ct. at 2251. The Eighth Circuit had held that the modified categorical approach applied to a conviction under an Iowa burglary statute that was facially broader than generic burglary because it included, in addition to burglary of a building or other structure (which constitutes generic burglary), burglary of a "land, water, or air vehicle." 136 S. Ct. at 2550. The Eighth Circuit found this application of the modified categorical approach to be proper even though the Iowa Supreme Court had expressly held that the statute's specification of different locations at which a burglary could occur did not

set out alternative elements, but only "alternative methods of committing a single crime." *Id.* (citation and alterations omitted). Because the modified categorical approach applied, the appellate court held, the district court could review record materials to determine whether the defendant's burglary conviction had in fact involved a building or other structure (*i.e.*, constituted generic burglarly) and, if it had, could count the conviction an ACCA predicate. *Id.*

The Supreme Court reversed, holding that the modified categorical approach applies only to a facially overbroad statute that is divisible into separate crimes having different elements. *Id.* at 2253-54. *Mathis* described elements as the "constituent parts of a crime's legal definition — the things the prosecution must prove to sustain a conviction." *Id*. at 2248 (citation and internal quotation marks omitted). The Supreme Court rejected the Eighth Circuit's view that that the modified categorical approach could consider divisions based on non-element facts even if, as in the Iowa statute, the alternatives were set forth in the statute as alternative means of committing the crime. *Id*. at 2253-54; *see also id.* at 2255-56 (noting that the "fortuity of legislative drafting," such as including alternative means in the statutory text, cannot alter the requirement that the modified categorical approach can apply only based on the elements of an offense).

Having held that the modified categorical approach applies only to elements, the Supreme Court briefly addressed a non-exhaustive list of factors to be considered when a "sentencing court [is] faced with an alternatively phrased statute . . . to determine whether its listed items are elements or means." *Id*. at 2256. The Court noted that the Iowa Supreme Court had "definitively answer[ed] the question" in the instant case by holding that the different locations identified in the statute were merely "alternative methods" of committing a single crime. *Id.* The Court then identified several other considerations that might show whether a statutory alternative constituted an element, including whether different alternatives carried

7

different punishments (which would make them elements) or whether the statute reflected that the alternatives were merely "illustrative examples" (which would support treating them as means). *Id.* Finally, the Court noted that if these state-law sources "fail[ed] to provide clear answers," courts could consider record documents, including charging documents and jury instructions, for the "sole and limited purpose" of determining the elements of the offense, although it acknowledged that such documents might "not in every case speak plainly." *Id*. at 2257.

### *Reasons Why* **Mathis**'s *Specific Concerns Do Not Apply to the Bail Reform Act*

Although it is true that many, if not most or all, decisions recommend a categorical approach to the Bail Reform Act, those decisions predate *Mathis*. And *Mathis*'s specific concerns are not at issue here.

At heart, *Mathis* is about whether, in determining whether a defendant's crime is a predicate for the consequence of the ACCA, the Court looks at the predicate crime's statute only, or evidence on the record. *Mathis* itself concerns how to determine whether a predicate crime qualifies as a predicate for the ACCA, and its rule is based on factors specific to that statute and to its use at sentencing, factors that do not apply to a detention decision.

*Mathis* explains that in this context of the ACCA, the Supreme Court prefers reliance on the statute rather than record evidence for three reasons. *See Mathis,* 136 S. Ct. at 2252-53. The first is that the ACCA's text refers to "convictions" rather than conduct. *See Mathis,* 136 S. Ct. at 2252. The second is that the ACCA affects sentencing and therefore the modified categorical approach would raise Sixth Amendment concerns because "only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction," and "[t]hat means a judge cannot go beyond identifying the crime of conviction to explore the

manner in which the defendant committed that offense." *Mathis,* 136 S. Ct. at 2242. The third is that statements of non-elemental facts in the records of prior convictions are prone to error because proving non-elemental facts is generally unnecessary. *Mathis,* 136 S. Ct. at 2253.

*Mathis*'s justifications for the categorical approach do not apply to pretrial detention decisions. First, although the ACCA refers to "convictions," the Bail Reform Act refers instead to an "offense," s*ee* 18 U.S.C. § 3156(a)(4)(A),(B), which suggests that the Bail Reform Act may be more concerned with the defendant's actual conduct. Second, although the ACCA raises Sixth Amendment concerns about the role of the judge and the jury, the Bail Reform Act does not because pretrial detention decisions are squarely in the province of the judge. Third, statements of non-elemental facts in the record at detention hearings about the defendant's dangerousness are likely to be accurate because the use, attempted use, or threatened use of force is an integral part of the detention decision.

Although it is true that many, if not most or all, decisions recommend a categorical approach to the Bail Reform Act, those decisions predate *Mathis*.

### *If* **Mathis** *Applies to the Bail Reform Act, Then § 844(e) is Divisible, the Modified Categorical Approach Applies, and Keogan's Threats Qualify as Crimes of Violence*

Assuming that *Mathis* applies to the Bail Reform Act, then the Order of Detention should still stand because § 844(e) is divisible, the modified categorical approach applies, the Court can consider evidence in the record, and Keogan's threats qualify as crimes of violence.

Much of Mr. Keogan's argument boils down to the question of whether 18 U.S.C. § 844(e)'s inclusion of providing false information is an element of a crime that is separate, *i.e.*, divisible, from the other crime of threatening to use arson, or whether providing false information is just one means to satisfy the general crime that § 844(e) circumscribes.

Section 844(e) provides as follows:

> Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be [punished].

18 U.S.C. § 844.

Mr. Keogan says that making a threat and conveying false information are two means of satisfying the same element, citing cases like *United States v. Spruill,* 118 F.3d 221, 224-25 (4th Cir. 1997), and *United States v. Smegal,* 2010 WL 4922694 at *5 (D. Mass. Nov. 29, 2010), which conflate the two into a single element. But neither of those cases focused on whether making a threat and conveying false information were divisible elements or instead alternate means of satisfying the same element. Instead, *Spruill* answered a different question: whether "by means of fire or an explosive" was an essential element. (It is, of course.) *See Spruill,* 118 F.3d at 224-27. *Smegal* merely repeats *Spruill*'s list of elements but similarly does not examine the means/element question regarding making threats and conveying false information.

Figuring out means versus elements can be tricky. But here § 844(e) makes it relatively clear that we are talking about alternative elements, not alternative means. To begin with, making a threat and conveying false information are different acts; not only do they take on different verbs and actions conceptually, they even require different *mens rea* ("willfully makes any threat" vs. "maliciously conveys false information"), *see* § 844(e). They are therefore not "diverse means of satisfying a single element of a single crime." *See Mathis,* 136 S. Ct. at 2249 (stating that if a statute required use of a "deadly weapon" and then listed "the use a knife, gun, bat, or similar weapon," the list of weapons would specify various means rather than elements).

They are not "various factual ways of committing some component of the offense." *Id.* Rather, they specify different acts.

That they are different acts is confirmed by one test that Mr. Keogan himself suggests: focusing on what the jury must find unanimously in order to convict, on the theory that elements must be found unanimously whereas means need not. *See* Defendant's Motion at 4 (citing *Mathis,* 136 S. Ct. at 2249); *see also Richardson v. United States,* 526 U.S. 813, 817 (1999) ("Calling a particular kind of fact an 'element' carries certain legal consequences. The consequence that matters for this case is that a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element.") (citation omitted), *cited in Mathis,* 136 S. Ct. at 2248, 2249. This test goes against Mr. Keogan. *United States v. Schmidlin* notes that a jury considering whether to convict a defendant under 18 U.S.C. § 844(e) must find unanimously that the defendant made a threat or unanimously that he maliciously conveyed false information, and that the jury cannot split its determination between the two alternatives. 441 Fed. App'x 338 (6th Cir. Sept. 28, 2011). The Sixth Circuit noted that the jury instruction requiring unanimity was correct: "Although § 844(e) can be violated in two different ways, the given instruction made clear that Schmidlin could be convicted under the statute only if the jury was unanimous on which of the two ways he had violated § 844(e)." *Id.* at 341-42. Although *Schmidlin* did not examine the means-versus-elements question, its treatment and description of threats versus false information supports the conclusion that the two are multiple alternative elements, not alternative means.

Because willfully making a threat and maliciously conveying false information are multiple alternative elements, *Mathis* approves the use of the "modified categorical approach." *See Mathis,* 136 S. Ct. at 2249 ("To address that need [of figuring out which of the alternative

11

elements was integral to the defendant's conviction], this Court approved the 'modified categorical approach' for use with statutes having multiple alternative elements."). Using the modified categorical approach, the court considers documents such as the indictment to determine with which crime the defendant was charged. *See id.*

Here, the indictment makes clear that Mr. Keogan was charged with making threats, not with conveying false information. Both Counts 1 and 2 charge that he "willfully made a threat to intimidate another and to unlawfully destroy a building . . . by means of fire." Neither count charges that he conveyed false information.

Consequently, Mr. Keogan is charged with a crime of violence under the Bail Reform Act, 18 U.S.C. § 3156(a)(4)(A) ("an offense that has an element of the offense the . . . threatened use of physical force against the person or property of another"), and he can be held for dangerousness under 18 U.S.C. § 3142(f)(1)(A).

### *If* **Mathis** *Applies and it is Unclear Whether § 844(e) is Divisible, the Modified Categorical Approach Still Applies*

Assuming that *Mathis* applies and the Court concludes that § 844(e) and its case law make unclear whether willfully making an threat and maliciously conveying false information are alternative elements, then *Mathis* instructs how to determine the matter: "if [the] law fails to provide clear answers," the Court should "peek at the record documents . . . for the sole and limited purpose of determining whether the listed items are elements of the offense." *Mathis*, 136 S. Ct. at 2256-57 (citation, alteration, and internal quotation marks omitted). In that case, "an indictment . . . could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime."

As discussed above, the indictment here answers the means-versus-elements question in favor of finding that making a threat and conveying false information are alternative elements. Because Mr. Keogan was charged only with making threats, he is charged with a crime of violence under the Bail Reform Act, 18 U.S.C. § 3156(a)(4)(A), and can be held for dangerousness under 18 U.S.C. § 3142(f)(1)(A).

## OBSTRUCTION OF JUSTICE

Mr. Keogan is correct that Chief Magistrate Judge Boal made no findings or rulings regarding the third ground on which the United States moved for detention, that Mr. Keogan poses "a serious risk that [he] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, a prospective witness" in this case, 18 U.S.C. § 3142(f)(2)(B).

If this Court finds that Mr. Keogan cannot be detained on grounds of risk of flight or dangerousness, then the Court should remand this matter to Chief Magistrate Judge Boal to render findings on § 3142(f)(2)(B) as an alternative ground for detention. Mr. Keogan's anti-Muslim sentiments (the witnesses and victims here are Muslim), his willingness to threaten, injure, and intimidate others who displease him, and his heavy drinking — all documented in the record — support detention on this ground.

## THE PROPOSED CONDITIONS OF RELEASE ARE INADEQUATE

The conditions of release that Mr. Keogan proposes are deficient in a number of ways. First and most fundamentally, they propose that Mr. Keogan be returned to the residence that he shared with his wife and parents, none of whom prevented him from engaging in heavy drinking (despite two convictions for operating under the influence) or accessing firearms and ammunition (despite two felony convictions that prevented such access). Neither Mr. Keogan's wife nor his parents are fit to serve as third-party custodians. Second, the proposed conditions do

13

not include a ban on alcohol in the residence.  This is important because Mr. Keogan's own counsel admitted, "As Mr. Keogan explains, he's somebody who admittedly has a drinking problem.  Gets drunk, goes online, and quote 'dicks around' and says mean, hurtful, offensive things online."  Transcript [Dkt. # 20] at 57:15-18.  With three other adults in the residence of legal drinking age and Mr. Keogan's admitted drinking problem, the circumstances will be ripe for him to drink to excess and do what he may again.  Third, the conditions are premised on the false notion that Mr. Keogan is amenable to supervision.  After all, conditions work only to the extent that a defendant will comply with them because he is amenable to following higher authority.  But Mr. Keogan's extensive history demonstrates that he does not respond to higher authority:  he has a drinking problem despite prior OUI convictions; he accesses guns and ammunition despite the statutory prohibition; he threatens people despite a prior conviction for threats; he has prior defaults and a violation of probation on his record.  Put simply, for him no conditions will reasonably work.

## CONCLUSION

For all these reasons, Mr. Keogan's motion should be denied and the Court should refrain from revoking Chief Magistrate Judge Boal's order of pretrial detention.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:  /s/ Scott L. Garland
     Scott L. Garland
     Assistant U.S. Attorney

Dated: October 13, 2016

14

**CERTIFICATE OF SERVICE**

I hereby certify that this document will be filed through the ECF system and therefore will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

> */s/ Scott L. Garland*
> Scott L. Garland
> Assistant United States Attorney

Date: October 13, 2016